**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2018 CA 0542**

**CONSOLIDATED WITH**

**2018 CA 0543**

**AXIALL, LLC**

**VERSUS**

**ASSUMPTION PARISH BOARD OF REVIEW**

DEC 3 0 2019

**Judgment Rendered:** _____

* * * * * * * *

On Review from the 23rd Judicial District Court
In and for the Parish of Assumption
State of Louisiana
No. 35890 consolidated with No. 36115

The Honorable Thomas J. Kliebert, Jr., Judge Presiding

* * * * * * * *

Jesse R. Adams, III
Andre B. Burvant
New Orleans, Louisiana

Attorneys for Appellant
Axiall, LLC

Brian A. Eddington
Baton Rouge, Louisiana

Attorney for Appellee
Wayne Blanchard, Assessor
for Assumption Parish

* * * * * *

**BEFORE: GUIDRY, McDONALD, McCLENDON, HOLDRIDGE, and
LANIER, JJ.**

Holdridge J. dissents with reasons.
Guidry, J. concurs in the result.

**McCLENDON, J.**

Axiall, LLC appeals a district court judgment that reversed the decisions of the Louisiana Tax Commission (the Commission) and reinstated the ruling of the Assumption Parish Board of Review (the Board), which ruling upheld the correctness of an ad valorem tax assessment by Assumption Parish Assessor, Wayne "Cat" Blanchard (the Assessor). For the reasons that follow, we reverse the district court's judgment and reinstate the decisions of the Louisiana Tax Commission.

## FACTS AND PROCEDURAL HISTORY

This appeal arises from petitions for judicial review to the 23rd Judicial District Court filed by the Assessor, contesting various decisions rendered by the Commission for tax years 2014, 2015, and 2016 (the tax years) regarding property owned by Axiall, LLC (Axiall).[1] The assessments of six brine wells and caverns owned by Axiall for the tax years are at issue. Pursuant to the procedures established by the Louisiana Administrative Procedures Act, Axiall first petitioned the Board for correction of the Assessor's valuation of the six brine wells and caverns at issue. The Board upheld each assessment. Axiall thereafter sought relief from the Commission.

The Commission heard the appeals for tax years 2014 and 2015 on August 9, 2016; the appeal for tax year 2016 was heard by the Commission on February 1, 2017. In each appeal and for each tax year, the Commission reversed the Board, as more fully later explained. For purposes of judicial review, the appeals were consolidated and the 23rd Judicial District Court held a hearing on November 16, 2017. The district court took the matter under advisement and, on December 19, 2017, signed a judgment that reversed and vacated the Commission's decisions and affirmed the correctness of the assessments for the tax years by reinstating the ruling of the Board.

Axiall owns six solution brine wells in Assumption Parish. The six brine wells bear serial numbers 142314, 142315, 142316, 158778, 973089, and 973515, and are otherwise identified as wells #1, #2, #3, #4, #5, and #6, respectively. Each well has

---

[1] At issue are Commission Docket numbers 14-22007-003, 14-22007-004, 15-22007-001, 15-22007-002, 16-22007-002, and 16-22007-003.

2

an associated cavern; thus, there are also six caverns. Each cavern bears the same number as its associated well. The terms "well" and "cavern" are often used interchangeably because the well and cavern are thought of as one; however, separate appraisals are performed for each of the components. Axiall owns the land upon which wells and caverns 1, 2, 3, 4, and 6 are located. Another entity, Texas Brine Company, LLC, owns the land upon which well 5 and its associated cavern sit. Wells and caverns 1, 2, 3, 4, and 6 are taxed under assessment number 3700004005, and well and cavern 5 are taxed under assessment number 3700004013.

The brine wells owned by Axiall are operated by a third-party, and the brine derived therefrom is transported via pipeline to Axiall's plant in Plaquemine to make various products. Axiall extracts brine from the wells by injecting water into the ground, and as the brine is extracted, a void or hole within the salt mass in the ground is created. Thus, the caverns within the salt mass are created as a byproduct of the mining operations; the purpose of the mining is not to create the cavern. The wells at issue are not used in connection with oil and gas production purposes.

No hydrocarbons or other products have been stored on a commercial basis in the caverns created as a result of Axiall's brine mining operations, and Axiall has never had an intention of using any of the caverns for commercial storage. Further, the Department of Natural Resources has never permitted the caverns to be used for commercial storage; rather, the Department of Natural Resources has exclusively permitted the brine mining wells and associated caverns for use in the mining of brine. In addition, if Axiall sought to store hydrocarbons in the caverns, it would be legally unable to do so because the cavern walls are too close to one another to meet the requirements per the Department of Natural Resources regulations for hydrocarbon storage. Other than extracting salt, Axiall has used the cavern associated with well number 3 to dispose of mined minerals that are not useful in its manufacturing process including calcium carbonate and magnesium hydroxide. Axiall described its use of cavern number 3 as simply returning the unused minerals to the ground. The Assessor

3

asserts cavern number 3 has value as a disposal cavern, so it has a commercial purpose and should be assessed as such.

The Assessor retained a consulting firm, Pritchard & Abbott, Inc. (P&A), to estimate the fair market value of the brine wells and caverns for the tax years. P&A is a private appraisal consulting firm based in Texas that performs appraisals of complex properties, including minerals, industrial, utility, and personal property related to the oil and gas fields. The work performed by P&A in Louisiana is two-fold. First, P&A consults with parish assessors directly on individual property appraisals on an as-needed basis.[2] Secondly, P&A works with the Louisiana Assessor's Association and, in that capacity, participates in Rules and Regulation hearings before the Commission regarding potential changes to the Rules and Regulations. P&A participates in hearings related to numerous Chapters of the Commission's Rules and Regulations, including Chapters 9 and 25, the Chapters at issue here.

In performing individual assessments, P&A consultants follow the Commission's Rules and Regulations. In valuing the wells and caverns at issue, P&A utilized Chapter 25 of the Commission's Rules and Regulations to appraise and value the properties using a replacement cost new formula. Axiall maintains that wells and caverns should not be valued under Chapter 25, but rather, under Chapter 9.

In the past, P&A has made recommendations to the Commission to alter the language in Chapter 9 to clarify that brine wells and caverns used in brine production are not to be valued in accordance with Chapter 9 and are rather to be valued in accordance with Chapter 25. To effect this change, P&A recommended clarifying that the only injection wells to which Chapter 9 should apply were those applicable to oil and gas production or those oil and gas wells that have been converted from production wells to injector wells for salt water disposal purposes. The recommended changes,

---

[2] P&A consultants particularly help with the inspection process of properties and in assigning a value to properties to be placed on the tax roll. Under P&A's contract with the Assessor, its duty is to appraise the property, provide an estimate of fair market value, and support these appraisals for the Assessor. This includes performing inspections and delivering actual appraisal reports.

which would have made Chapter 25 the Chapter under which to assess brine wells, were rejected by the Commission.

For tax year 2014, Axiall initially filed with the Assessor a Personal Property Tax Report – Oil and Gas Property (Form LAT 12) and a Personal Property Tax Report – Pipelines (Form LAT 14). Form LAT 12 included a notation regarding the caverns, noting as follows: "A cavern is created by the mining of these brine wells. These caverns are a part of the well and not a separate taxable property. These caverns are not used for commercial purposes." The Assessor responded to these forms with a letter notifying Axiall that the caverns are, under law, considered "commercial improvements" and are subject to ad valorem taxation. The letter further notified Axiall that the caverns should be reported like other commercial improvements using Form LAT 5. In response to the Assessor's letter, Axiall submitted the requested Form LAT 5 with an attachment listing each well, noting that through the mining activities in connection with each well, caverns were created. Axiall reserved its right to contest taxation of the caverns.

Similarly, in the 2015 and 2016 tax years, Axiall submitted Form LAT 12 and noted the existence of the caverns but asserted the caverns could not be used for a commercial purpose per Department of Natural Resource regulations, so they should not be taxed as a separate commercial improvement. Considering what had transpired in 2014, Axiall, under protest, also forwarded Form LAT 5 for the properties for tax years 2015 and 2016.

For each tax year, the Assessor valued the wells and caverns based on Chapter 25 of the Commission's Rules and Regulations instead of Chapter 9, as requested by Axiall. The Assessor also taxed the caverns separately from the wells as commercial improvements. In 2014, the caverns were assigned a value, but in 2015 and 2016, all but one cavern (cavern 3) were assigned a value of zero-dollars ($0) because the Assessor recognized the caverns were legally unusable.

Relative to the review of the assessments, the Commission's six decisions were substantially similar. In pertinent part, in each decision, the Commission held that the

5

brine wells should be valued in accordance with the provisions set forth in Chapter 9 of the Commission's Rules and Regulations, not Chapter 25 as advanced by the Assessor, and the caverns at issue could not be used for any commercial purpose and were not being used for any commercial purpose, so the caverns had no value. Accordingly, the Commission assessed the caverns as having a "$0" fair market value. In docket number 16-22007-002, the Commission's decision varied slightly, as the Commission concluded that caverns 1, 2, 4, and 6 had no commercial value because they were legally unusable, and cavern 3 was not being used for a commercial purpose, so thus, it had no commercial value. Similarly, in docket number 16-22007-003, the Commission decided that the cavern associated with brine well number 5 had no commercial value because it was legally unusable.

The district court reversed and vacated each decision of the Commission, thereby reinstating the Board's ruling and affirming the Assessor's valuations. From this judgment, Axiall appeals. Axiall asserts the district court erred in not affording the proper level of deference to the Commission and in overturning its decisions.

## STANDARD OF REVIEW

Louisiana Constitution Article VII § 18(E) provides that "[t]he correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law." See also LSA-R.S. 47:1992, 47:1989, and 47:1998. Judicial review of the correctness of the assessment is authorized by LSA-R.S. 47:1998A. The extent of that review is governed by the Administrative Procedure Act, LSA-R.S. 49:964F and G. **201 St. Charles Place, LLC v. Louisiana Tax Commission**, 16-0510 (La.App. 1 Cir. 2/17/17) (unpublished), 2017 WL 658752, *3, writ denied, 17-0500 (La. 5/12/17), 221 So.3d 75; **Panacon v. La. Tax Com'n**, 97-2093 (La.App. 1 Cir. 1/8/99), 747 So.2d 572, 573-74. Review is confined to the administrative record established before the Commission. LSA-R.S. 49:964F; **Williams v. Opportunity Homes Limited Partnership**, 17-0955 (La. 3/13/18), 240 So.3d 161, 166.

Pursuant to LSA-R.S. 49:964G, the district court may affirm or remand the decision of an agency, while the reversal or modification of that decision requires that additional conditions be met. **201 St. Charles Place, LLC**, 2017 WL 658752 at *3. Louisiana Revised Statutes 49:964G restricts reversal or modification of agency decisions to instances in which substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

When reviewing a final decision of an agency, the district court functions as an appellate court. **201 St. Charles Place, LLC**, 2017 WL 658752 at *3; **EOP New Orleans, L.L.C. v. Louisiana Tax Com'n**, 01-2966 (La.App. 1 Cir. 8/14/02), 831 So.2d 1005, 1008, <u>writ denied</u>, 02-2395 (La. 11/27/02), 831 So.2d 286. An aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate court of appeal. <u>See</u> LSA-R.S. 49:965. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of a court of appeal. **EOP New Orleans, L.L.C.**, 831 So.2d at 1008. The reviewing court shall make its own determination and conclusions of fact by a preponderance of the evidence, based upon its own evaluation of the record reviewed in its entirety upon judicial review. **Williams**, 240 So.3d at 166.

7

Consequently, this court will conduct its own independent review of the record in accordance with the standards provided in LSA-R.S. 49:964G.[3] See **Fitzmorris v. New Covington Apartments, LP**, 16-1253 (La.App. 1 Cir. 8/29/17) (unpublished), 2017 WL 3725110, *5, writ denied, 17-1736 (La. 12/5/17), 231 So.3d 630; **EOP New Orleans, L.L.C.**, 831 So.2d at 1008.

## DISCUSSION

Article VII, § 18(A) of the Louisiana Constitution provides that "[p]roperty subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which ... shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property." Article VII, § 18(D) of the Louisiana Constitution provides that the parish tax assessor enjoys the exclusive right to "determine the fair market value of all property subject to taxation within his respective parish." See also LSA-R.S. 47:1957; **Williams** 240 So.3d at 163-64.

The fair market value shall be determined in accordance with criteria established by law, which must be uniformly applied throughout the state. LSA-Const. Art. VII, § 18(D); LSA-R.S. 47:2323A. In furtherance of maintaining the uniformity required, LSA-R.S. 47:2323A provides that "[u]niform guidelines, procedures and rules and regulations as are necessary to implement said criteria shall be adopted by the Louisiana Tax Commission only after public hearings held pursuant to the Administrative Procedure Act." Further, each assessor is required by Section 2323B to "follow the uniform guidelines, procedures, and rules and regulations in determining the fair market value of all property subject to taxation within his respective parish or district."

Although administrative construction or interpretation of rules is not binding on the courts, in construing an administrative rule or regulation, a court must necessarily look to the administrative construction or interpretation thereof, where the meaning of the words used is in doubt, or is ambiguous, because such construction provides the

---

[3] We find the recent case of **TBM-WC Sabine, LLC v. Sabine Parish Board of Review**, 17-1189 (La.App. 3 Cir. 7/18/18), 250 So.3d 1075, cited by the parties, to be factually distinguishable.

best indication of the intent of the agency in promulgating a rule or regulation. This is based on the recognition that the agency is typically in a superior position to determine what it intended when it issued a rule, how and when it intended the rule to apply, and the interpretation of the rule that makes the most sense given the agency's purposes in issuing the rule. **Women's & Children's Hosp. v. State, Dep't of Health & Hosps.**, 08-946 (La. 1/21/09), 2 So.3d 397, 402-03. Thus, a reviewing court should afford considerable weight to an administrative agency's construction and interpretation of its rules and regulations adopted under a statutory scheme that the agency is entrusted to administer, and its construction and interpretation should control unless they are found to be arbitrary, capricious, or contrary to its rules and regulations. **Forbes v. Cockerham**, 08-0762 (La. 1/21/09), 5 So.3d 839, 859.

The relevant portions of Chapters 9 and 25 of the Commission's Rules and Regulations employ one of the procedures established by LSA-R.S. 47:2323, namely, the cost approach, to value properties included in both Chapters.[4] The cost approach derives a fair market value by "estimating the replacement or reproduction cost of the improvements; deducting therefrom the estimated depreciation; and then adding the market value of the land, if any." LSA-R.S. 47:2323C(2). Both Chapters 9 and 25 promulgate methods to arrive at the replacement or production cost based on the specific types of property included in each Chapter, since, most importantly, depreciation of assets varies based on the type of property, and thus, different types of property require different methods for calculating depreciation or obsolescence. No legislation provides for a method by which obsolescence is to be calculated; this is supplied by the Rules and Regulations.

Regarding the Commission's decisions, we first address the Commission's finding that Axiall's wells should be assessed using Chapter 9 of the Commission's Rules and Regulations. Prior to resolving the merits of this dispute, we address the Assessor's argument that the titles of the Chapters should somehow be dispositive of the issue

---

[4] Three approaches for determining fair market value are set forth in LSA-R.S. 47:2323C, as follows: "The fair market value of real and personal property shall be determined by the following generally recognized appraisal procedures: the market approach, the cost approach, and/or the income approach."

presented. Chapter 25 of the Commission's Rules and Regulations provides the guidelines for assessing "General Business Assets." Chapter 9 provides the guidelines for assessing "Oil and Gas Properties." These are merely the titles of these Chapters, however, and it is a general rule of statutory construction that the title of an act is not a part of the statute, but it can be used to resolve doubt as to legislative intent as to a specific provision. See LSA-R.S. 24:177; **State v. Lemoine**, 15-1120 (La. 5/3/17), 222 So.3d 688, 693, n.9. Thus, the titles of the Chapters do not form part of the rules contained therein, and the rules should be interpreted independent of the titles when possible.

As mentioned above, since the inquiries here involve interpretation of the Commission's own Rules and Regulations, the interpretations given and conclusions made by the Commission are entitled to great deference and should only be overturned upon a finding that the Commission's construction and interpretation are found to be arbitrary, capricious, or contrary to its rules and regulations. The text of Chapter 9 of the Commission's Rules and Regulations provides the guidelines for determining the fair market value of various types of wells. The wells identified in Chapter 9 include injection wells, which are described as "wells completed as single or wells reclassified by the Louisiana Department of Conservation after a conversion of another well. Wells are used for gas and water injection for production purposes, also used for disposal wells." LAC 61:V.901. As explained by the facts herein, water is injected into the brine wells for the purpose of producing brine. This clearly fits within the description of injection wells included in Chapter 9.

In addition to the fact that Chapter 9 specifically includes service wells, including injection wells, the Commission's Property Classification Standards Regulations define types of property, including oil and gas wells, under the broader classification of personal property. The standards include a broad class description that is broken down further into a "Sub-Class Description," and finally, a definition of the class is provided. LAC 61:V.304B. The relevant class description here is "Oil and Gas Wells." One sub-class description for oil and gas wells includes injection wells and service wells.

10

Injection wells and service wells are defined as "[i]njection wells, service wells, saltwater disposal, **brine wells**, water wells." **Id.** (emphasis added). Of note, brine wells are included without any limitation that would limit the brine wells to only those used in connection with oil and gas production.

Moreover, throughout the Commission's Rules and Regulations, the term "injection well" does not appear anywhere other than in Chapter 9 and in the Commission's Property Classification Standards. Similarly, "water well" and "disposal well" only appear in these sections. Since injection wells are specifically included for valuation under Chapter 9, do not appear anywhere else in the Commission's Rules and Regulations, and are defined to include brine wells, we find that the Commission's construction and interpretation valuing the brine wells under Chapter 9 was not arbitrary, capricious, or contrary to its rules and regulations. Therefore, the district court erred in reversing the decisions based on that determination.[5]

Our second inquiry is to determine whether the evidence supported the Commission's determination that the caverns have no commercial purpose and have a zero-dollar ($0) value.[6] Simply put, the Assessor argues that the void created in the ground as a byproduct of the brine mining constitutes a commercial improvement and thus, has a commercial purpose.

No party has pointed to a Chapter of the Commission's Rules and Regulations that provides for taxation of this type of property. In fact, the Commission's regulations only have one provision that specifically addresses property of this type. Chapter 25 provides a procedure for valuation of "Salt Dome Storage Wells and Caverns permitted as Class II Type 10, 11-L or 11-N." LAC 61:V.2501(H); LAC 61:V.2503. This refers to a specific class designation of the Department of Natural Resources, which requires

---

[5] We also find persuasive the fact that proposals have been rejected by the Commission that would have classified brine wells, not used in connection with oil and gas production, as taxable under Chapter 25, as previously discussed.

[6] The relief requested by appellant is for this court to reinstate the decision of the Commission. The Commission did not discuss the separateness of the caverns. Rather, the Commission seemingly accepted that the caverns were commercial improvements, but since the caverns were legally unusable for commercial storage, a value of zero-dollars ($0) was warranted. Thus, we pretermit discussion of whether the caverns constitute a commercial improvement separate from the well for purposes of ad valorem taxation at this time.

11

special permitting, and no evidence adduced indicates that the caverns at issue were permitted as any of these three specific classifications of wells. Contrarily, the undisputed evidence indicates the wells and caverns at issue have only ever been permitted by the Department of Natural Resources for the mining of brine, which does not fall into any of the specific class designations above. Further, a review of the Department of Natural Resources regulations indicates that these types of wells only consist of storage wells. The only commercial use recognized for these caverns in the pertinent regulations is for storage and/or commercial disposal purposes.

A commercial use is one that is connected with or furthers an ongoing profit-making activity; a noncommercial use is one that does not involve the generation of income. See Black's Law Dictionary (11th ed. 2019). We note that the Assessor realized the lack of a commercial purpose for caverns 1, 2, 4, 5, and 6 after tax year 2014 and assigned these caverns a zero dollar ($0) value for tax years 2015 and 2016. Further, uncontroverted testimony indicates that "a cavern that's being used for brining is not generating income" based on the existence of the cavern. The condition, use, intended use, and permits of the caverns and the relevant regulations remained unchanged from 2014 through 2016. Thus, it would be illogical to tax the caverns for 2014 and not for 2015 and 2016. Accordingly, we find that the evidence supported the Commission's determination to assign a zero-dollar ($0) value to these caverns in 2014, and the district court erred in reversing the Commission.

By contrast, cavern 3 was taxed in every tax year by the Assessor. Similar to the other caverns, cavern 3 is not permitted and cannot be used for storage. It is, however, being used to return minerals Axiall has extracted from the ground back to the ground. Though it is possible to say that the disposal use of the cavern is connected with Axiall's profit making activity, it may also be easily said that the disposal of minerals back into the ground does not generate income. Therefore, we likewise find the evidence supported the Commission's determination that the use of cavern 3 was noncommercial and thus had no value. Consequently, the district court also erred in reversing this decision of the Commission.

12

**CONCLUSION**

For these reasons, we reverse the judgment of the district court and hereby reinstate the decisions of the Louisiana Tax Commission. Costs of this appeal, in the amount of $5,627.50, are assessed to the Assumption Parish Board of Review.

**JUDGMENT OF THE DISTRICT COURT REVERSED; DECISIONS OF THE LOUISIANA TAX COMMISSION REINSTATED.**

AXIALL, LLC

VERSUS

ASSUMPTION PARISH BOAD
OF REVIEW

NO. 2018 CA 0542 cw
NO. 2018 CA 0543

COURT OF APPEAL

FIRST CIRCUIT

STATE OF LOUISIANA

HOLDRIDGE, J., dissents.

I respectfully dissent. I would affirm the judgment for the reasons assigned

by the district court in its written reasons for judgment.